FILED

2014 Dec-24  AM 09:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CANDICE OLIVIA TILLEY,           )
                                 )
          Plaintiff              )
                                 )
     vs.                         )   Case No.  4:13-cv-01869-HGD
                                 )
CAROLYN COLVIN,                  )
COMMISSIONER, SOCIAL SECURITY    )
ADMINISTRATION,                  )
                                 )
          Defendant              )

## MEMORANDUM OPINION

This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.  *See* Doc. 10.  In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits under Title II of the Social Security Act.  (Doc. 1).  Upon consideration of the administrative record and the memoranda of the parties, the Court finds that the decision of the Commissioner is due to be affirmed.

## I.    Proceedings Below

Plaintiff filed an application for supplemental security income (SSI) in October 2010, alleging that she became disabled on August 1, 2008.  (Tr. 21, 147).  The claim

was initially denied on March 8, 2011.  Plaintiff received a hearing before an administrative law judge (ALJ) on June 8, 2012.  On July 12, 2012, the ALJ issued a decision denying plaintiff's application. (Tr. 18-29).  The Appeals Council denied plaintiff's request for review on August 6, 2013.  (Tr. 1-7).  Plaintiff appeals the Commissioner's final decision pursuant to 42 U.S.C. § §§ 405(g) and 1383(c).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ followed these steps and found that plaintiff has not engaged in substantial gainful activity since October 21, 2010. (Tr. 23). He further found that plaintiff had the severe impairments of status post wrist fracture and repair,

degenerative disc disease of the lumbar spine, rheumatoid arthritis, bipolar disorder, panic disorder, obesity and depressed arch syndrome.  However, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*).

The ALJ determined that plaintiff has the RFC to perform sedentary work, except that she can occasionally push, pull, and operate foot controls with the right lower extremity, can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds.  (Tr. 25).  The ALJ further determined that plaintiff can perform frequent fine and gross manipulation and feeling with the right side.  She should avoid concentrated exposure to extreme cold or heat, excessive vibrations, and all exposure to unprotected heights and hazardous moving machinery.  She can perform simple unskilled work involving simple work-related decisions and few, if any, work-place changes that are gradual and well-explained.  She can occasionally interact with the public and co-workers but cannot engage in tandem tasks.  Supervision should also be occasional.  (*Id.*).

Based on the testimony of a vocational expert (VE), the ALJ found that, considering plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that

she can perform.  Therefore, the ALJ found that plaintiff was "not disabled" under the Social Security Act.  (Tr. 28-29).

## III.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates

against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.    Plaintiff's Claims

Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence of record from plaintiff's treating sources. Plaintiff notes that medical records document that in 2008 and 2009, plaintiff received mental health treatment from Mountain Lakes Behavioral Health Care. (Tr. 334-46). The records reflect that she was seen at this facility subsequent to a suicide attempt in August of 2008. At that time, plaintiff was reporting a history of depression, anxiety, panic attacks and severe mood swings. On September 17, 2008, plaintiff asserts she was noted to be having visual and auditory hallucinations. (Tr. 340). She was also assessed as having a Global Assessment of Functioning (GAF) of 45. (Tr. 341).

Plaintiff further states that the records reflect that in December 2008, despite medications, she was continuing to have severe mood swings and auditory hallucinations. (Tr. 336). One treatment note reflects that plaintiff had major depressive disorder, recurrent, severe, with psychosis. (Tr. 334-35). According to plaintiff, she subsequently began receiving mental health treatment from Cherokee Etowah DeKalb Mental Health Center (CEDMHC) where she continued to be treated

for bipolar disorder with visual and auditory hallucinations and suicidal thinking. (Tr. 729-60, 811-27).  However, plaintiff asserts that the ALJ failed to mention these records in his decision or state the weight that they should be given.  According to plaintiff, the ALJ gave greater weight to one-time consultative examiner Dr. Bentley, rather than plaintiff's own treating sources.

Plaintiff also asserts that the ALJ failed to properly consider plaintiff's pain pursuant to the Eleventh Circuit's three-part pain standard.  According to plaintiff, the medical record evidence documents chronic and severe pain corroborated by plaintiff's treating physicians, including a long history of rheumatoid arthritis with associated chronic pain in her peripheral joints.  (Tr. 253-59).  Further, evidence reflects that plaintiff uses a wheelchair at times and, at her hearing, was using a walker.  She also claims to have a documented history of lower back and hip pain. (Tr. 800, 804).

Plaintiff asserts that her documented medical condition, confirmed by examination, indicates that she is suffering from severe pain.  Plaintiff submits that she should have been found disabled based on her pain alone pursuant to SSR 96-7p and the Eleventh Circuit's pain standard.

Plaintiff contends that, based on the above errors, the ALJ's decision cannot be based upon substantial evidence and that his decision is due to be reversed and benefits awarded.

## V.    Discussion

Plaintiff bears the ultimate burden of proving disability.  *See* 42 U.S.C. § 423(d)(1)(A), (5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  In discussing plaintiff's mental health functioning, the ALJ stated that he undertook a review of her mental health treatment records during the period in question.  It is obvious from reading the ALJ's decision that this included plaintiff's CEDMHC records.  He noted that her GAF level has consistently been reported to be between 52 to 55.  (Tr. 24, citing Exs. 18F and 21F).  The ALJ further noted that, according to *The Diagnostic and Statistical Manual of Mental Disorders, 4th Ed.*, a GAF of between 51 and 60 represents moderate symptoms or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  (Tr. 25).

The ALJ further stated that, ultimately, the evidence documented that plaintiff functions independently in her daily activities and interacts with family on a consistent basis.  Although she alleges significant difficulty being around others and isolating herself, her ability to shop for groceries and attend church on a regular basis

reveals that she is capable of occasional interaction with the public. The ALJ concluded that plaintiff's admitted abilities indicate that she can maintain concentration, persistence and pace to complete simple tasks.

The ALJ also noted that plaintiff underwent a consultative psychological evaluation conducted by Dr. Jack Bentley, Jr., Ph.D., on January 27, 2011. (Tr. 24, citing Ex. 1F). Dr. Bentley noted there were no impairments in plaintiff's psychomotor skills and she did not appear to be in distress during the interview. He also noted that there were no difficulties in her receptive or expressive communication skills. Likewise, her tertiary and immediate memories were intact. According to Dr. Bentley, her mood was, at most, mildly dysphoric and congruent with her affect. There was no obvious evidence of anxiety or restlessness. There was no indication of phobias, obsessions or unusual behaviors. He also noted that she completes her activities of daily living without assistance. (Tr. 24).

In his decision, the ALJ noted that Dr. Gloria Roque, Ph.D., reviewed the evidence on behalf of the State Agency and opined that plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation of extended duration. (Tr. 24, citing Ex. 3F).

A review of these records confirms the findings of the ALJ.  For the relevant time period, October 2010 through her most recent visit to CEDMHC in April 2012, the records reflected reports of only moderate symptoms.  (Ex. 18F at Tr. 730-36; Ex. 21F at Tr. 811-27).  Most of plaintiff's treatment records for this time period reflect unremarkable appearance, affect and orientation in addition to the above referenced GAF scores of between 52 and 55.  Plaintiff's CEDMHC records during this period also showed fair to good progress with medication and therapy.  (Ex. 21F; Tr. 817, 823-27).

These findings, as well as the findings of the examining and reviewing psychologists of record, are consistent with the ALJ's RFC which limits plaintiff to simple, unskilled work involving simple work-related decisions and few, if any, workplace changes that are gradual and well-explained, with only occasional supervision and interaction with the public and co-workers, and with a restriction on engaging in tandem tasks.  (Tr. 25).

As noted above, contrary to plaintiff's assertion, it is clear that the ALJ did consider plaintiff's records from the CEDMHC in reaching his determination of her RFC.  While plaintiff complains that the ALJ failed to give any weight to the opinions of her own treating sources, she failed to point to any opinion which the ALJ failed to consider.  In fact, the ALJ noted that "[a]lthough none of the records contains a

true opinion or medical source statement of the claimant's ability to engage in basic work-related activity, these records have been used to help determine the full scope of the claimant's impairments." (Tr. 27).  Plaintiff's CEDMHC records reflect notes from counselors and licensed social workers, but no physicians or valid medical sources.  (Tr. 729-60, 811-27).  Only medical sources can provide medical opinions regarding the existence of a medically determinable impairment.  An opinion from a counselor or social worker is not a "medical opinion."  *See* 20 C.F.R. §§ 416.913(a), (d)(1) and 416.927(a)(2).  However, non-medical sources, such as licensed social workers and therapists, may be used to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.  SSR 06-3p, 2006 WL 2263437.

While plaintiff has submitted medical records regarding mental health treatment received by her from Mountain Lakes Behavioral Health Care Center in 2008 and 2009, these records are outside the relevant time period under consideration.  The most recent record from Mountain Lakes is from May 2009, and it reflects that services were terminated because plaintiff refused service.  (Tr. 335). While those records reflect that plaintiff suffered occasions of auditory and visual hallucinations outside the relevant time period, during the relevant time period, this problem is reflected as being under control.  Likewise, the records provided reflect

a general improvement in plaintiff's mental condition over time.  For instance, on February 16, 2011, plaintiff told Dr. Reddy that she could not drive because she got confused easily.  (Tr. 232).  However, on August 11, 2011, she reported to a therapist at CEDMHC that she recently got her driver's license.  (Tr. 827).

Substantial evidence supports the ALJ's determination of the relevant medical evidence regarding plaintiff's mental health treatment and condition in assessing her mental functioning.  The ALJ considered the relevant records from CEDMHC, her January 2011 consultative psychological evaluation with Dr. Bentley, and the March 2011 assessment of Dr. Roque which resulted in the conclusion that plaintiff suffered from severe mental impairments and an RFC that included limitations which take these impairments into account.

Plaintiff asserts that she has a record of chronic and severe pain corroborated by her treating physicians.  She alleges that the ALJ failed to properly apply the Eleventh Circuit "pain standard" to these records.  However, the ALJ properly considered plaintiff's complaints of joint and back pain in assessing her RFC.  (Tr. 25-28).

A plaintiff's statements of symptoms alone are insufficient to establish a severe impairment.  20 C.F.R. § 404.1508 (2013) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory

findings, not only by your statement of symptoms").  A three-part "pain standard"
applies when a claimant attempts to establish disability through his or her own
testimony of pain or other subjective symptoms.  The pain standard requires
(1) evidence of an underlying medical  condition and either (2) objective medical
evidence that confirms the severity of the alleged pain arising from that condition, or
(3) that the objectively determined medical condition is of such severity that it can be
reasonable expected to give rise to the alleged pain.  *Wilson v. Barnhart*, 284 F.3d
1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.
1991); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999).  The ALJ does not have
to recite the pain standard word for word; rather, he must make findings that indicate
that the standard was applied.  *Cf. Holt*, 921 F.3d at 1223; *Brown v. Sullivan*, 921
F.2d 1233, 1236 (11th Cir. 1991).

The ALJ found that the evidence gave rise to questions as to the veracity of the
plaintiff's allegations.  Particularly, the ALJ noted that, on September 17, 2010,
plaintiff presented herself to the DeKalb Regional Medical Center with a claim of
severe upper abdominal pain.  At that time, Margaret Stephens, CRNP, reported that
plaintiff's musculoskeletal system  had a normal range of motion with no swelling or
deformity.  (Tr. 27, citing Ex. 12F at Tr. 625).

Likewise, Dr. Bentley stated that there was no impairment to plaintiff's psychomotor skills. (Tr. 27, citing Ex. 1F). The ALJ noted that Dr. Bentley did not report observing the claimant need or even use a walker during the evaluation. (Tr. 27).

Dr. V. Snehaprabha Reddy, M.D., performed a consultative physical examination of plaintiff on February 16, 2011. (Ex. 2F). The ALJ observed that Dr. Reddy also did not report that plaintiff used a walker during the examination. He described plaintiff's gait as normal. Nonetheless, he noted that her right wrist was slightly deformed secondary to a fracture repair and reported that she was unable to walk on her heels due to alleged back pain. She could walk on her toes with little difficulty but could not squat due to back pain. She had depressed arches on both feet. Her finger dexterity was within normal limits. Her grip was 4/5 in the right hand and 5/5 in her left hand. Her straight leg raising test was positive bilaterally at four inches; muscle strength was 4/5 in both lower girdles. (Tr. 27).

The ALJ further noted that an x-ray of plaintiff's hip taken on March 11, 2012, interpreted by Dr. Christopher Green, M.D., showed that the femoral head contours and hip joint spaces were preserved and symmetric. (Tr. 27, citing Ex. 20F). Plaintiff's treating source records consistently note that she has a full range of motion in her joints. (Tr. 27, citing Exs. 15F and 17F).

The ALJ also noted that plaintiff has been formally diagnosed with obesity, and her medical records show a repeated pattern of excessive weight for her height. (Tr. 27, citing Exs. 15F, 17F and 22F). However, he states that there is no evidence that her obesity or other impairments preclude her from performing work at the sedentary level of exertion, as this level of work would minimize the effect on her joints and body system. Furthermore, the additional restrictions upon plaintiff's work activities would reasonably afford accommodation for the arthritis in her knees and the deformity of her right wrist. (Tr. 27).

Although plaintiff asserts that she has a "long history" of rheumatoid arthritis, the records she submitted reflect treatment in 1999, over ten years before the onset of her alleged disability. The last record of her treatment for this condition is in September of 1999 (Tr. 253-59), although she made at least two trips to the emergency room in 2011 complaining of hip pain. (Tr. 800, 804). Consultative examiner, Dr. Reddy, also noted a limited range of motion in the plaintiff's lumbar spine and hip and witnessed a positive straight leg raise bilaterally. (Tr. 230, 233).

However, after considering all of plaintiff's medical records and complaints of pain, the ALJ determined that, though suffering from pain, plaintiff's pain is not as severe as she claims. She has submitted records regarding rheumatoid arthritis from 1999 and two trips to the emergency room in 2011. Likewise, she relies on the

examination by Dr. Reddy to support her claim of crippling pain.  However, other medical records reflect occasions when she appears to have had a full range of motion and no indication that she needed a walker when she was evaluated by Dr. Reddy or Dr. Bentley.  In addition, an x-ray of plaintiff's hip showed no abnormalities, and her complaints of pain reflected improvement with medication.  (Tr. 796, 801-02).  Thus, substantial evidence supports the ALJ's determination that plaintiff's subjective complaints were not entirely credible.  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.  *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  Consequently, the decision of the ALJ is due to be affirmed.

## VI.   Conclusion

Upon review of the administrative record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, that decision is due to be AFFIRMED.  A separate order will be entered.

DONE this 24th day of December, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE